### Louis Heidenheimer & Co. v. W. E. Ogborn.

1. Where a petition has been filed under section 230 of the code, and an order of attachment allowed, and subsequently, on the hearing of a motion to that effect, the order of attachment is dismissed, the proper practice is also to enter judgment dismissing the action.
2. Under that section of the code, to justify the attachment, the fraudulent intent, to injure the creditor, or secure some benefit to the debtor, must appear *actually to exist*: it is not necessarily sufficient proof of that intent that it appears that *the actual* or even *the necessary* consequences of the sale are to hinder and delay creditors.

GENERAL TERM.—Proceeding in error to reverse a judgment of dismissal rendered by Storer, J., at February term, .A. D. 1857.

The facts in the case sufficiently appear in the decision.

*Stallo & Andrews,* for plaintiffs in error.

*T. J. Gallagher* and *W. C. McDowell,* for defendant in error.

SPENCER, J., delivered the opinion of the court.

The plaintiffs in this case filed their original petition under section 230 of the code, for the purpose of procuring an attachment upon defendant's property, before the maturity of plaintiffs'

claim, on the ground that the defendant had sold and conveyed the greater part of his property, with the "fraudulent intent to defraud his creditors." The affidavit in support of the application, set forth substantially that the defendant had agreed to sell his entire stock of goods, at seventy-five per cent. of their cost value, to Davis, Hughes & Co., for lands in the State of Wisconsin, at a wholly fictitious valuation, and had partly executed said sale; that defendant was insolvent, owing debts to the amount of forty thousand dollars; and that said sale was made without consulting any of his creditors, and without making provision for the payment of his debts. Upon this affidavit an attachment was allowed, and property seized. Subsequently the case came before the court on motion to dismiss the attachment; upon which motion oral testimony was heard, and the court being of the opinion, upon the evidence, that the defendant, in the making of said sale, had no actual design of committing fraud upon his creditors, and that the charge of fraud in the plaintiffs' affidavit was not sustained by the proofs, dismissed the attachment, and afterward the petition itself; to which order of dismissal and judgment the plaintiffs excepted, and to reverse the same have brought the present action.

As to the final judgment we have no doubt it was properly entered, if the attachment was properly dismissed. Section 232 of the code provides that "if the court or judge refuse to grant an order of attachment, the action shall be dismissed." It is true that there is no express provision of the code authorizing or requiring the dismissal of the action upon the dissolving of an attachment thus granted. But the former seems the necessary result of the latter. The sole object of the attachment is to secure the plaintiffs against the consequences of the defendant's fraud. Where the debt is not due the plaintiff has no cause of action, except to secure himself. The attachment, therefore, lies at the foundation of the action. If it be refused, in the first instance, the action is *ipso facto* dismissed; if granted and dissolved, as the foundation of the action is gone, the superstructure must go with it.

Louis Heidenheimer & Co. v. W. E. Ogborn.

The real and only question, in the case is as to whether the court erred in vacating the order of attachment. And the decision of this depends upon the further question, whether the allegation of fraud, set forth in the affidavit accompanying the plaintiffs' petition, was true or false ? The court below found that it was not sustained by the evidence heard, and that there was no fraudulent intent, on the part of the defendant, in the disposition of his property, to defraud his creditors.

The bill of exceptions does not embody the evidence heard on the motion. No affidavits, either pro or con, have been exhibited with the record ; and we are therefore left to determine this question upon the finding of such facts as the judge who heard the motion thought proper to show upon the record. The facts thus found are simply these : That at the date of the agreement to sell, the defendant was insolvent, owing debts to the amount of $60,000 and upward, and having a stock of goods on hand of the value of $21,000, besides outstanding credits, and interest in real estate of a value not ascertained ; that the goods were rated and sold to Davis & Co. at their fair value, for which the latter gave their certificates of location of land warrants for three hundred and twenty acres of land in Wisconsin, a deed for five hundred and twenty acres of land in Wisconsin, an assignment of a title bond for eighty acres in Illinois, and a land warrant for one hundred and eighty acres of land not yet located, and to which good titles could have been made; that these lands were sold at $12.50 per acre, and if they should fall short at that price of paying for the goods, the deficiency was to be paid at six and twelve months; that the property thus taken, with the books of account and bills receivable of defendant, and other property in store, were shortly after conveyed and assigned, by the defendant, to Thomas J. Gallagher, for the benefit of all his creditors; but that defendant owned other real estate, in different parts of the United States, which was not thus conveyed; that the above-named sale and assignment were made by defendant upon consultations with, and at the urgent request of, his friends, but without notice to any

of his creditors; that defendant had no knowledge of the nature and value of the lands he was to receive except what he learned from the representations of Davis & Bramwell; that defendant, in all this, was actuated by honest motives, and had no actual design of committing fraud.

As matter of law, arising upon these facts, the court find that the charge of fraud, set forth in the plaintiffs' affidavit, is not sustained, and therefore the attachment is ordered to be dismissed.

By reference to section 230 of the code it will be seen, that an attachment may be issued "when a debtor has sold, conveyed, or otherwise disposed of his property, with the fraudulent intent to cheat or defraud his creditors, or to hinder or delay them in the collection of their debts." The intent, that is fraudulent intent, is made the essence of the right to issue an attachment—an intent or purpose to hinder and delay creditors. The court has found that in point of fact there was no such intent in the present case, and how can we gainsay this finding in the absence of the testimony upon which it was predicated? It is claimed on the part of the plaintiffs that the intent must be inferred from the consequence of the act, and if the necessary consequence of the act be to hinder or delay creditors, the necessary inference is that such was the intent of the party, and therefore it was fraudulent. To this conclusion we can not assent. The effect of such a doctrine would be that no debtor, in failing circumstances, could sell his property on credit, however advantageous he might deem such a sale to be for himself and his creditors. To constitute such a sale fraudulent, it must be with a fraudulent intent to delay or hinder the creditor, that is, an intent to injure him, and reserve some supposed benefit to the debtor. But if we come to consider the plaintiffs' proposition to the fullest extent, do the facts found by the court, irrespective of the finding as to the matter of actual intent, necessarily require us to infer such intent? Is it by any means clear that the creditors of the defendant have been, or could have been, injured by this sale or exchange of property? Plaintiffs rely,

in their affidavit, upon two prominent facts: first, the sale of goods at low rates, and second, the sale of lands at high rates. It is found, first, that the goods were sold at a fair price: second; it was in proof that the lands were worth the price at which they were taken: third, it is found that the stock of goods was old. What they could have been sold for is not found: fourth, it does not appear that the lands may not have been just as saleable, and at as high a price, as the goods. There is, therefore, no injury, in fact, found to have been occasioned to creditors by the sale, and no intent to injure proven.

Counsel have said that the fact of taking the lands upon the representations of the owner was a circumstance of suspicion. True, it may have been, but it is not, of itself, fraudulent. Much would depend upon the character of the dealer. If honest and upright, he might safely rely upon his representations without being subjected to the imputation of fraud. Nor was it necessary to consult creditors as supposed. Defendant had a right to consult friends.

Now, whatever we may suspect or believe, we can not say, against the finding of the judge at special term on the whole evidence, that the creditors of the defendant were to be either injured or hindered by the sale referred to, and that there was a fraudulent design so to injure and hinder them.

Judgment affirmed.